*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZULKARNAIN KAGALWALLA, | : |
| Plaintiff, | : Civil Action No. 17-2071(FLW) |
| v. | : |
| | : **OPINION** |
| JENNIFER DOWNING, *et al.*, | : |
| Defendants. | : |

**WOLFSON, United States District Judge:**

*Pro se* Plaintiff Zulkarnain Kagalwalla ("Plaintiff") brings this § 1983 suit against defendants, Shing-Fu Hsueh, Anthony Fleres, David Aderhold, and West Windsor-Plainsboro School District (the "District Defendants"), as well as the West Windsor Township (the "Township") (collectively, "Defendants").[1] Although Plaintiff accuses these defendants of wrongful conduct that has allegedly violated Plaintiff's constitutional rights, the Amended Complaint lacks factual allegations that gave rise to the causes of action asserted in this case. In the instant matter, based on the lack of clarity in Plaintiff's pleadings, the District Defendants and the Township separately move for dismissal pursuant to Rule 12(b)(6). For the reasons expressed in this Opinion, Plaintiff's claims against the District Defendants and the Township are dismissed without prejudice; both motions to dismiss are **GRANTED**.

---

[1] Plaintiff also names as defendants Jennifer Downing, Renee Robeson, Jennifer Eugene, Hon. Darlene Pereksta, J.S.C., Allison Blake and the State of New Jersey. These defendants have not moved for dismissal at this time.

1

## BACKGROUND AND PROCEDURAL HISTORY

On March 30, 2017, Plaintiff, *pro se*, filed an initial Complaint, using a "fill-in-the-blank" form. On this form, Plaintiff lists federal question as the basis for this Court's jurisdiction, and in that regard, Plaintiff asserts that Defendants have violated his rights under the First Amendment Freedom of Speech, due process, parental rights and false arrest. *See* Compl. at p. 2. Plaintiff goes on to allege — devoid of any factual allegations — that an underlying incident occurred in Princeton Junction, New Jersey, on or around about January 15, 2017. Compl. at p. 3. The only averments Plaintiff asserts in the Complaint are the following:

> All the above named defendants have used their public position and authority to deprive me of my parental rights due process and privacy. Their objective was to silence me[.] During trail [sic] I will provide documentation as needed[.] They have used unconstitutional court orders and laws to indict me, have child services investigate us and file malicious complaints. [Defendants] David Aderhold and Jennifer Downing have used the grand jury by misleading the grand jury and lying to them to get an indictment against me and continue to prosecute me. All defendants have used the law to deprive me of my freedom of speech[.] All defendants have used law to deprive me of my right to participate in my local government and school meetings[.] [Defendant the Hon.] Darlene Pereksta [J.S.C.,] has used the bail order [to] violating [sic] due process.

*Id.* Based on these conclusory, vague allegations, Plaintiff seek millions of dollars in damages. Attached to the Complaint are, *inter alia*, various email correspondence, transcripts, and more importantly, a Verified Complaint for Investigation issued by the New Jersey Division of Child Protection and Permanency (the "Child Protection Services"). Because these documents are attached to the Complaint, the Court can consider them on this motion. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

On April 20, 2017, the District Defendants moved to dismiss Plaintiff's initial Complaint on the basis that Plaintiff has failed to state a claim. In response, Plaintiff filed an Amended Complaint. In the new pleading, Plaintiff attempts to add some clarity to his accusations.

However, rather than reading like allegations of a typical complaint, Plaintiff's amendments are more akin to arguments regarding certain facts, which are in response to the District Defendants' motion to dismiss. In short, it is very difficult to recount the sequence of events that gave rise to Plaintiff's claims.

From what the Court can glean from Plaintiff's submissions, this case arose out of the Child Protection Services' criminal investigation of Plaintiff for allegedly subjecting Plaintiff's teenage child ("Z.K.") to abusive circumstances. *See* Verified Complaint for Investigation, ¶ 4(a).[2] It appears that Z.K. complained to her school officials that her parents allegedly engaged in heated, verbal arguments and physical confrontations, often times in the middle of the night. These repeated episodes have caused Z.K. great stress and, according to investigative report, the minor child feared for the parents' safety as well as her own. *Id.* After Z.K.'s complaints, the school officials decided to contact the West Windsor Police Department and held Z.K. at the school to await the authorities. Consequently, Z.K. apparently missed her usual bus to go home, but was sent on a later bus, which prompted a call by Plaintiff to the police. *Id.*

Based on Z.K.'s account of the events at home, the Child Protection Services began an investigation, which included an interview with Z.K. The retention of Z.K. by school officials and the subsequent interview of Z.K. sparked a barrage of criticisms by Plaintiff directed at school administration. *Id.* at ¶ 4(d). Based on the records attached to the Complaint, it appears Plaintiff had sent numerous emails and/or other correspondence to school officials. Plaintiff's submissions of these emails, some of which were allegedly threatening and harassing in nature, resulted in the

---

[2] While I am considering this document on this motion, I am mindful that these are not Plaintiff's own allegations and he has not adopted them to be his version of the facts. As such, I recount facts from this Verified Complaint for the sole purpose of providing background facts as to the underlying incident.

indictment of Plaintiff for two counts of retaliation for a past official action. It appears that Plaintiff entered into a Pre-trial Intervention ("PTI") program to resolve his charges, and as a condition of his PTI, Plaintiff was directed to have no contact or direct communications, including emails, with individuals at the Mercer County Prosecutor's Office, West Windsor School District officials and the Township Council Board Members, Mayor and Staff. *See* Amended Bail Order, dated February 17, 2017.[3] It further appears that Plaintiff, at some point in time, violated these conditions and he appeared before the state court judge related to those violations.

While the state criminal matter is pending, Plaintiff filed the instant lawsuit making vague and conclusory allegations of deprivations of rights, as set forth, *supra*. The District Defendants and the Township moved separately to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than

---

[3] This Bail Order was attached to the Complaint.

4

allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequ ential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

Plaintiff in this matter is proceeding, *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir.

2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that pro se complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "[T]here are limits to [the courts'] . . . flexibility. . . . *[P]ro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## II. Plaintiff's Claims

As I have noted previously, it is difficult to ascertain the factual allegations supporting Plaintiff's *pro se* complaint. However, what Plaintiff does do clearly in his Complaint[4] is that he lists the causes of action that he intends to bring: 1) violation of his free speech rights under the First Amendment; 2) violation of due process under the Fourteenth Amendment; 3) interference with his parental rights under the Fourteenth Amendment; and 4) false arrest under the Fourth Amendment. I will address each, in turn.

---

[4] For the purposes of this Motion, the Court will consider both the allegations in Plaintiff's Original Complaint, as well as his Amended Complaint, because Plaintiff, in his new pleadings, only sought to supplement his initial complaint.

6

### A. Freedom of Speech

Without any clear indication in the Complaint, the Court will construe Plaintiff's free speech violation as a § 1983 First Amendment retaliation claim. To state such a claim, a plaintiff must allege facts showing: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Here, as to the allegations relating to his First Amendment rights, Plaintiff alleges only that Defendants "have used the law to deprive me of my freedom of speech." While not explicitly pled, it appears that Plaintiff takes issue with being criminally charged for sending correspondence to numerous officials in West Windsor, albeit the content of that correspondence, as indicated in the charges, included messages of threats and harassment.

Although the Court is required to liberally construe Plaintiff's Complaint, Plaintiff falls woefully short of stating a claim under the First Amendment. Indeed, the most fatal deficiency is that Plaintiff has not alleged how his barrage of emails sent to officials are deserving of protection under the First Amendment. In other words, there are no allegations that Plaintiff was engaging in constitutionally protected conduct, particularly since Plaintiff was charged with sending, *inter alia*, emails that were allegedly harassing and threatening in nature. Plaintiff is advised that, under the law, the Constitution plainly does not protect a citizen's conduct of sending threatening emails to public officials. *See Watts v. United States*, 394 U.S. 705, 708 (1969); *Virginia v. Black*, 538 U.S. 343, 359-360 (2003). Moreover, Plaintiff has not identified which defendant retaliated against him, and what actions that specific defendant took as a retaliatory act. Finally, Plaintiff does not allege a causal link. Plaintiff's First Amendment claim is dismissed without prejudice.

### B. Due Process

It is beyond dispute that to prevail on a procedural due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-140 (3d Cir. 2000); *see Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006). In the procedural due process jurisprudence, a plaintiff must show that the interest of which he was deprived, is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property." *Eggert v. Bethea*, 625 Fed. Appx. 54, 56 (3d Cir. 2015) (citations omitted). Having established that right, a plaintiff then must demonstrate that the procedures available to him did not provide "due process of law." *Id.* Importantly, whether there is an interest sufficient to trigger the protection of the Fourteenth Amendment is an issue of law to be decided by courts. *Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989).

Of course, the Constitution does not protect every trivial property interest; rather, to qualify as a protected interest, "a person clearly must have more than an abstract need or desire [for that interest]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* In that regard, to satisfy the first prong of a procedural due process property claim in this case, Plaintiff must have a legitimate, more than *de minis*, property interest. *See Bd. of Regents of State Colls v. Roth*, 408 U.S. 564, 577 (1972).

"Legitimate claims of entitlement may be created expressly by state statute or regulation or may arise from government policies . . . ." *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 809 (3d Cir. 1991) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)). Put differently, "[p]roperty interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understanding

that secure certain benefits and that support claims of entitlement to those benefits.'" *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007)(quoting *Bd. of Regents*, 408 U.S. at 577).

In this case, the Court is at a loss as to the basis for Plaintiff's due process claim. The only set of circumstances that the claim may be based upon is Plaintiff's criminal proceedings. But, Plaintiff has not alleged any specific property interest of which he was deprived, and fails to identify what process is due Plaintiff under the law that was constitutionally deficient. To the extent that Plaintiff challenges the decisions of the state court judge, those challenges should be in the form of an appeal to the state appeals court. In any event, as the pleadings appear in the Complaint, Plaintiff has not stated a claim under due process, and therefore that cause of action is dismissed without prejudice.

### C. Interference with Plaintiff's Parental Rights

It is well established that the Constitution protects parents' decisions regarding the care, custody, and control of their children; however, this protection is not without qualification. *Pickup v. Brown*, 740 F.3d 1208, 1235 (9th Cir. 2013) (quoting *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005) (noting that states may pass laws regarding compulsory school attendance, mandatory school uniforms, and imposing curfew on minors only)); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (holding that compulsory vaccination of children is constitutionally permissible under most circumstances). More particularly, "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 442 U.S. 584, 603 (1979). "[N]either rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state['s] . . . authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." *Prince*, 321 U.S. at 166;

9

*Troxel v. Granville*, 530 U.S. 57, 88 (2000) (Stevens, J., dissenting) ("A parent's rights with respect to her child have thus never been regarded as absolute . . . [and] a parent's interests in a child must be balanced against the State's long-recognized interests as *parens patriae*."); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("Parents have no more of an unlimited right to inflict corporal punishment on their children under the Fourth and Fourteenth Amendments than they do under the Free Exercise Clause.").

It is further without dispute that the state has a compelling interest in protecting children, and has broad authority to do so. *Croft v. Westmoreland Co. Children and Youth Serv.*, 103 F.3d 1123, 1125 (3d Cir. 1997); *see also Prince v. Massachusetts*, 321 U.S. at 167 ("[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare."); *id.* at 168 ("The state's authority over children's activities is broader than over like actions of adults."); *cf. Hodgson v. Minnesota*, 497 U.S. 417, 471 (1990) ("[W]here parental involvement threatens to harm the child, the parent's authority must yield.").

Here, Plaintiff has failed to allege upon which type of parental rights Defendants have unconstitutionally infringed. While it may be that Plaintiff accuses Defendants of unilaterally sending Z.K. home on a later bus after Z.K. complained to school officials regarding parental abuse, or perhaps, subjecting Z.K. to interviews with the Child Protection Services, neither scenario states a claim under the Fourteenth Amendment. In that regard, Plaintiff does not allege what decisions made by Defendants infringed upon Plaintiff's control of his minor child, particularly since, under the circumstances, Defendants have a compelling interest in protecting Z.K. Accordingly, Plaintiff's claim in this context is dismissed without prejudice.

### D. False Arrest

The Court construes Plaintiff to assert a claim under the Fourth Amendment for false arrest stemming from his indictment. It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Walmsley v. Philadelphia*, 872 F.2d 546 (3d Cir. 1989) (citing cases); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988); *see also James v. City of Wilkes—Barre*, 700 F.3d 675, 680 (3d Cir. 2012).

Here, Plaintiff's false arrest claim fails for the simple reason that Plaintiff has not alleged that he was arrested for the charges indicted against him. While Plaintiff has attached court transcripts related to his criminal proceedings and other relevant charging documents, Plaintiff has not alleged that he was actually arrested. Rather, it appears that Plaintiff was never apprehended by the police. Without that allegation, Plaintiff's false arrest cause of action simply cannot lie; it is also dismissed without prejudice.[5]

---

[5] Based on certain discrete language of Plaintiff's Complaint, Defendants construe, on their motions, that Plaintiff brought a claim for malicious prosecution. As I have indicated, Plaintiff only set forth four distinct causes of action, which I have discussed above, and to the extent Plaintiff wishes to bring a malicious prosecution claim, he may do so by moving to amend his Amended Complaint.

## CONCLUSION

Based on the foregoing reasons, both motions to dismiss brought by the District Defendants and the Township are **GRANTED**. Plaintiff's claims against them are dismissed without prejudice. To the extent Plaintiff wishes to revive those dismissed claims, he may move before the Magistrate Judge to amend his Complaint once again.

DATED: October 13, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge